UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| _____<br>)<br>The Committee of 100 on the Federal City, )<br>)<br>        Plaintiff,     )<br>)<br>   v.          )<br>)<br>Anthony Foxx, Secretary of   )<br>  Transportation, et al.,   )<br>)<br>       Defendants.   )<br>)<br>_____) | Case No. 1:14-cv-1903-CRC |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF CSXT'S UNOPPOSED MOTION TO INTERVENE**

     This lawsuit attempts to stop CSX Transportation, Inc. ("CSXT") from reconstructing and modernizing the Virginia Avenue Tunnel in Washington, D.C. Built more than a century ago, the tunnel is owned by CSXT and is a critical part of the freight and passenger rail network serving the mid-Atlantic and midwestern United States. The Federal Highway Administration and the District of Columbia Department of Transportation, among many other government entities, have both recognized the urgent need for this project as part of the larger effort to restore our nation's aging infrastructure and transportation systems. They have examined and exhaustively documented the potential environmental effects of the construction project in a multivolume Final Environmental Impact Statement (FEIS) that was years in the making.

     Plaintiff challenges the FEIS and the resulting Record of Decision under the National Environmental Protection Act (NEPA) and District of Columbia law. Because CSXT was not

named as a defendant but has a very strong interest in the outcome of this lawsuit, CSXT now moves to intervene as a defendant.

As demonstrated below and in the attached declaration of CSXT Vice President-Strategic Infrastructure Initiatives Louis E. Renjel, CSXT satisfies the four elements necessary for intervention as of right under Federal Rule of Civil Procedure 24(a).  *See Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C. Cir. 1998); *Associated Dog Clubs of N.Y. State v. U.S. Dep't of Agric.*, 2014 U.S. Dist. LEXIS 83282, at *6 (D.D.C. May 16, 2014).

*First*, CSXT holds an interest in the property which is the subject of the action.  CSXT owns the Virginia Avenue Tunnel and will spend over $150 million on the construction project.  *Second*, CSXT's interest may be impaired by the disposition of this action.  The purpose of this lawsuit is to halt the project and stop CSXT from repairing and modernizing its tunnel.  *Third*, CSXT's interests cannot be adequately represented by the existing parties.  The D.C. Circuit and this Court have repeatedly held that the Government cannot adequately represent the interests of a private entity with a financial stake in a project challenged under NEPA.  *Fourth*, CSXT's motion to intervene is timely.  Plaintiff filed its complaint yesterday.

CSXT requests, in the alternative, that the Court grant it permissive intervention under Rule 24(b), as doing so would "further the dual interests of justice and efficiency." *DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 25 (D.D.C. 2002).

## BACKGROUND

The Virginia Avenue Tunnel was built more than a century ago.  Today it remains a critical part of the freight rail network that serves citizens and businesses in the mid-Atlantic and midwestern United States.  The tunnel is owned by CSXT and is located in Capitol Hill.  It lies beneath approximately nine city blocks with exit portals just west of 2nd Street S.E. and just east

of 11th Street S.E.  CSXT is proposing to modernize this aging tunnel to ensure that this vital rail line can continue to carry and deliver the nation's freight.  CSXT plans to reconstruct the Virginia Avenue Tunnel at its own expense by adding a second track and by providing the necessary vertical clearance to accommodate double-stacked container shipments.  *See* Renjel Dec. ¶¶ 3-8, 18.

Because the construction project would involve the temporary closure of ramps on neighboring I-695, the Federal Highway Administration initiated the NEPA process in May 2011, with the District of Columbia Department of Transportation serving as the joint lead agency.  Engineers and environmental experts studied the project to assess its environmental impact, publishing in May 2012 a Notice of Intent to Prepare a Draft EIS.  The draft EIS was issued in July 2013, and following a public comment period, the final EIS (including the identification of a Preferred Alternative) was released on June 13, 2014.  The Record of Decision approving the Preferred Alternative was released on November 4, 2014.  *See* http://www.virginiaavenuetunnel.com/project-resources (links to project documents).

CSXT has a strong interest in the Virginia Avenue Tunnel project because the tunnel has become a major bottleneck to both passenger and freight rail traffic in the region.  The tunnel measures 28 feet across at its narrowest point—sufficient to accommodate only a single track.  *See* FEIS 1-4.  However, the rail lines approaching the tunnel are double-tracked.  The result is a bottleneck as trains back up waiting to enter the tunnel, delaying their entrance until a train passing the other way has exited the tunnel.  And as overall traffic levels increase on the line, the bottleneck effect radiates outward.  *See* Renjel Dec. ¶ 6.  As five state departments of transportation noted in a joint 2009 study, the Virginia Avenue Tunnel creates a "notable capacity limitation[]" and is a "primary congestion point[]" for the region's rail system.  *See* I-95

Corridor Coalition, *Mid-Atlantic Rail Operations Phase II Study: Final Report* 4-7 (2009).[1] The Metropolitan Washington Council of Governments similarly noted that the tunnel "has long been identified as one of the most significant freight bottlenecks on the East Coast." *Transportation Improvement Program for the Metropolitan Washington Region: FY 2013-2018*, at D-1 (2012).[2]

Moreover, the tunnel has only 18 feet of vertical clearance, while a minimum of 21 feet is required to accommodate modern double-stacked container shipments. FEIS 2-21. In recent years, U.S. businesses have increasingly come to rely upon intermodal shipping—that is, shipping their products in containers that can be easily transferred from one mode of transportation (ship, train, truck) to another, eliminating the need to unpack and repack shipments in transit. Shippers and carriers can achieve even greater efficiency when the containers are double-stacked on specialized rail cars. The volume of double-stacked intermodal freight is widely expected to increase in the decades ahead, as highways become increasingly congested and the expansion of the Panama Canal will enable foreign shippers to deliver containers to ports along the Gulf and Atlantic coasts. Expanding the vertical clearance of the Virginia Avenue Tunnel is necessary to ensure that these double-stacked trains are able to deliver their goods to businesses and consumers in a timely and efficient way. *See* Renjel Dec. ¶¶ 8-13.

The existing tunnel is an aging piece of infrastructure. CSXT must devote increasing amounts of time and resources to inspection, preventive maintenance and repair to ensure continued safe operations. Because the tunnel is so narrow, this work often means that train traffic through the tunnel must be halted, sometimes with short notice. Stopping rail traffic in an

---

[1] *Available at* http://www.i95coalition.org/i95/Portals/0/Public_Files/pm/reports/MAROps%20Phase%20II%20Final%20Report.pdf.

[2] *Available at* http://www.mwcog.org/clrp/projects/tip/fy1318tip/FULL_FY13-18_TIP.pdf.

abrupt way can have enormous impacts on traffic throughout the region, much as a disabled subway train can cause massive backups that take hours to dissipate.  *See* FEIS 2-1 to 2-7.

## ARGUMENT

**I.     CSXT Is Entitled To Intervention As Of Right.**

Federal Rule of Civil Procedure 24(a) provides:  "On timely motion, the court must permit anyone to intervene who … claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  The D.C. Circuit has identified the four factors necessary for intervention as of right—interest, impact, inadequacy of representation, and timeliness (*see Mova Pharm.*, 140 F.3d at 1074)—and CSXT satisfies each one.

**A.     CSXT Has An Interest In The Subject Of The Lawsuit.**

An "intervenor's interest is obvious when [it] asserts a claim to property that is the subject matter of the suit."  *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981).  In other NEPA cases, the court has found the interest element satisfied by a company with a property interest in the land or activity that is the subject of the environmental impact statement.  *See, e.g.*, *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 14, 15 (D.D.C. 2010); *S. Utah Wilderness Alliance v. Norton*, No. 01-cv-2518, 2002 U.S. Dist. LEXIS 27414, at *17 (D.D.C. June 28, 2002).

There can be no dispute that CSXT has a strong interest in the subject of this lawsuit.  CSXT is the owner of the Virginia Avenue Tunnel; it operates trains through the tunnel on a daily basis; and it plans to invest many millions of dollars in the construction project that Plaintiff challenges.  CSXT and its railroad predecessors have owned and invested in the tunnel

5

for more than a century, and the tunnel will continue to play a critical role in the company's rail network well into the future.  *See* FEIS at 1-1 to 1-4, 2-5.

### B.     CSXT's Interest Could Be Impaired By The Disposition Of The Lawsuit.

The Court has explained that the impairment test "is not a rigid one," and is readily satisfied when an agency's "decision . . . was favorable" to the proposed intervenor "and the present action is a direct attack on that decision."  *Wildearth Guardians*, 272 F.R.D. at 13-14 (impact requirement satisfied when adverse ruling would limit company's ability to compete); *S. Utah Wilderness Alliance*, 2002 U.S. Dist. LEXIS 27414, at *17 (impact requirement satisfied when plaintiffs sought rescission of oil leases held by plaintiff pending the government's compliance with NEPA).

In this case, the Federal Highway Administration has issued a favorable Record of Decision, authorizing CSXT to repair and modernize the Virginia Avenue Tunnel.  The $175 million project is a key part of the company's strategic plan to ensure that its rail network's capacity is sufficient to handle the increased demands of the 21st century.  For the reasons stated above and in the attached declaration of CSXT Vice President Louis Renjel, the project is critically important to the company and a court order vacating the Record of Decision, or otherwise delaying the project, would harm CSXT's interests.[3]

### C.     The Existing Parties Cannot Adequately Represent CSXT's Interests.

The Supreme Court has held that "this requirement of [Rule 24] is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making

---

[3] For the same reasons, CSXT satisfies the requirement that a defendant-intervenor have constitutional standing.  As in *Wildearth Guardians*, were the Court to block the agency's favorable decision, CSXT "would suffer a concrete injury-in-fact fairly traceable to that disposition; accordingly, [it] has standing to intervene in this action."  272 F.R.D. at 15; *see also Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) (explaining that "any person who satisfies Rule 24(a) will also meet Article III's standing requirement").

that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). This Court has similarly described the inadequate-representation requirement as a "lenient" standard, *Cal. Valley Miwok Tribe v. Salazar*, 281 F.R.D. 43, 47 (D.D.C. 2012), and noted "the putative intervenor's burden here is *de minimis*." *Wildearth Guardians*, 272 F.R.D at 13.

CSXT's interests are not adequately represented by the existing Defendants. "[I]t is well established that governmental entities generally cannot represent the 'more narrow and parochial financial interest' of a private party." *Wildearth Guardians*, 272 F.R.D. at 15 (quoting *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 737 (D.C. Cir. 2003)). The D.C. Circuit has expressed "skepticism" that government agencies, "with their unique obligations" to represent the "general public, can be found to adequately represent the interests of potential intervenors." *Cal. Valley Miwok Tribe*, 281 F.R.D. at 47 (citing *Fund for Animals,* 322 F.3d at 736 & n.9). In fact, the D.C. Circuit has "frequently" concluded that where the "government has no financial stake in the outcome of the suit," it cannot adequately represent the interests of a private company with "economic and proprietary interests" at stake. *Hardin v. Jackson*, 600 F. Supp. 2d 13, 16 (D.D.C. 2009) (citing *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986)). Here, the government Defendants and CSXT have different stakes in the matter and they may make different arguments.

### D.     CSXT's Motion Is Timely.

A motion to intervene must be timely filed. *See Wildearth Guardians*, 272 F.R.D. at 13-15. Here, CSXT moved to intervene the day after the Plaintiff filed its complaint.

**II.     In The Alternative, The Court Should Grant CSXT Permissive Intervention.**

Rule 24(b)(1) allows permissive intervention "on timely motion" by a party with "a claim or defense that shares with the main action a common question of law or fact." It is "appropriate" to grant permissive intervention when doing so "furthers the aims of judicial efficiency, one of the guiding principles of Rule 24." *Me-Wuk Indian Cmty. v. Kempthorne*, 246 F.R.D. 315, 320 (D.D.C. 2007).

Permissive intervention is warranted here because CSXT intends to raise claims and defenses that share common questions with the main action. Indeed, CSXT's "defense of [the governmental] Defendants' actions would raise the same factual and legal issues that Defendants will likely raise in support of their decision[]" to issue a favorable Record of Decision. *Butte Cnty. v. Hogen*, No. 08-cv-519, 2008 U.S. Dist. LEXIS 46480, at *9 (D.D.C. June 16, 2008). The Defendants will likely address, among other things, whether the steps leading to the Record of Decision satisfied NEPA and District of Columbia law.

Permissive intervention would also serve the "interests of justice," *DSMC, Inc.*, 273 F. Supp. 2d at 25, because Plaintiff's lawsuit challenges CSXT's right to make improvements to its own property. For that reason, CSXT has a very strong interest in the outcome of this lawsuit and should be allowed to participate as a party.

## CONCLUSION

CSXT has a strong interest in this litigation and cannot be adequately represented by the existing parties. Accordingly, this Court should grant CSXT leave to intervene as a defendant.

Dated: November 13, 2014                                    Respectfully submitted,

|  |  |
|---|---|
|  | /s/ Thomas H. Dupree, Jr. |
| Peter R. Steenland, Jr. | Thomas H. Dupree, Jr. |
| (D.C. Bar No. 79236) | (D.C. Bar No. 467195) |
| SIDLEY AUSTIN LLP | Michael K. Murphy |
| 1501 K Street, N.W. | (D.C. Bar No. 468907) |
| Washington, DC 20005 | David A. Schnitzer |
| (202) 736-8532 | (D.C. Bar No. 1022420) |
|  | GIBSON, DUNN & CRUTCHER LLP |
|  | 1050 Connecticut Avenue, N.W. |
| Peter J. Shudtz | Washington, DC 20036 |
| (D.C. Bar No. 188243) | (202) 955-8500 |
| CSX TRANSPORTATION, INC. |  |
| 1331 Pennsylvania Avenue, N.W. |  |
| Suite 560 |  |
| Washington, DC 20004 |  |
| (202) 783-8124 |  |