**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| The Committee of 100 on the Federal City, Plaintiff, v. Anthony Foxx, Secretary of Transportation, et al., Defendants, and CSX Transportation, Inc., Defendant-Intervener. | Case No. 1:14-cv-1903-CRC |

**CSX TRANSPORTATION, INC.'S**
**MOTION TO QUASH PLAINTIFF'S SUBPOENA**

1. CSX Transportation, Inc. ("CSXT") moves to quash the subpoena served on it by the Plaintiff on December 11, 2014.
2. Attached to this motion are a supporting memorandum of points and authorities together with exhibits and a proposed order.
3. In accordance with Local Rule 7(m), counsel for CSXT has conferred with counsel for the Plaintiff, who states that his client opposes this motion.

Dated: December 26, 2014

Respectfully submitted,

/s/ Thomas H. Dupree, Jr.

Thomas H. Dupree, Jr.
(D.C. Bar No. 467195)
Michael K. Murphy
(D.C. Bar No. 468907)
David A. Schnitzer
(D.C. Bar No. 1022420)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
(202) 955-8500

Peter R. Steenland, Jr.
(D.C. Bar No. 79236)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8532

Peter J. Shudtz
(D.C. Bar No. 188243)
CSX TRANSPORTATION, INC.
1331 Pennsylvania Avenue, N.W.
Suite 560
Washington, DC 20004
(202) 783-8124

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| The Committee of 100 on the Federal City, Plaintiff, v. Anthony Foxx, Secretary of Transportation, et al., Defendants, and CSX Transportation, Inc., Defendant-Intervener. | Case No. 1:14-cv-1903-CRC |

**CSXT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO QUASH PLAINTIFF'S SUBPOENA**


Peter R. Steenland, Jr.
(D.C. Bar No. 79236)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8532

Peter J. Shudtz
(D.C. Bar No. 188243)
CSX TRANSPORTATION, INC.
1331 Pennsylvania Avenue, N.W.
Suite 560
Washington, DC 20004
(202) 783-8124

Thomas H. Dupree, Jr.
(D.C. Bar No. 467195)
Michael K. Murphy
(D.C. Bar No. 468907)
David A. Schnitzer
(D.C. Bar No. 1022420)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
(202) 955-8500

## TABLE OF CONTENTS

INTRODUCTION .......... 1

BACKGROUND .......... 3

ARGUMENT .......... 6

I. The Subpoena Demands Discovery That Is Impermissible In A NEPA Case Adjudicated On The Administrative Record. .......... 6

A. NEPA Challenges Are Typically Confined To The Administrative Record. .......... 6

B. The Committee Has Failed To Make The "Strong Showing Of Bad Faith Or Improper Behavior" By The Government Necessary To Allow Discovery In A NEPA Case. .......... 7

C. At A Minimum, The Subpoena Must Be Quashed As Premature. .......... 9

II. The Subpoena Is Unduly Burdensome Because It Demands That CSXT Produce Within 10 Days Vast Quantities Of Irrelevant Documents In Broad Categories With Virtually No Date Restrictions Or Other Meaningful Limitations. .......... 10

A. The Subpoena Demands Large Numbers Of Documents That Are Irrelevant To The Committee's Claims. .......... 10

B. The Subpoena Fails To Allow A Reasonable Time To Comply. .......... 13

CONCLUSION .......... 14

Defendant-Intervenor CSX Transportation, Inc. (CSXT) respectfully submits this memorandum in support of its motion to quash the subpoena Plaintiff The Committee of 100 on the Federal City (the "Committee") served on CSXT on December 11, 2014.

**INTRODUCTION**

This case arises from the Committee's effort to block the reconstruction of the Virginia Avenue Tunnel in Washington, D.C. The tunnel is a key piece of the region's transportation infrastructure that was built more than a century ago. It is now approaching the end of its useful life and has become a bottleneck to freight and passenger trains moving through the city. CSXT is the tunnel owner and the project sponsor. The Committee's lawsuit contends that the Federal Highway Administration (FHWA) and other government agencies violated the National Environmental Policy Act (NEPA) by issuing a Record of Decision (ROD) that the Committee claims did not adequately address the project's environmental impact.

Even though a NEPA challenge is adjudicated based on the administrative record—and even though the Government is still in the process of compiling that record—the Committee has nonetheless served CSXT with a subpoena demanding that CSXT produce vast quantities of documents within ten days. *See* Exhibit A. The Committee's apparent goal is to conduct a wide-ranging search through years' worth of CSXT's files in hopes of uncovering evidence of a secret agreement in which the District of Columbia "predetermined" the outcome of the NEPA review.

The Committee's subpoena is impermissible under the law of this Circuit and should be quashed for many reasons.

First, discovery is generally forbidden in NEPA cases. NEPA challenges, like all challenges based on the Administrative Procedure Act (APA), are adjudicated based on the materials considered by the agency and contained in the administrative record. The D.C. Circuit has strictly enforced this rule, holding that the "APA limits judicial review to the administrative

record except when there has been a strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review." *Theodore Roosevelt Conservation P'shp v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010). Neither exception applies here. The Committee has made no showing that the Government acted in bad faith, and it cannot seriously contend that the administrative record is insufficient to allow judicial review.

Second, the subpoena is premature. Even if the Committee could justify conducting discovery into documents that are not contained in the administrative record, it is impossible to identify those documents *before* the administrative record has been prepared. It would be unnecessary and premature to force CSXT to conduct massive, expedited searches for documents, some of which may well be contained in the administrative record that the Committee will soon receive.

Third, the subpoena must be quashed because its overbroad requests would impose a substantial and undue burden on CSXT, and because it sets an unreasonable time for compliance. The majority of the Committee's document requests demand that CSXT identify, collect, review and produce documents within 10 days. Moreover, the subpoena is overbroad and unduly burdensome, especially in a case involving agency decisionmaking. The subpoena demands vast quantities of documents in 27 categories, almost all of which have no relevance to the claims presented in this lawsuit and are aimed at supporting the Committee's "predetermination" theory. The District of Columbia did not of course "predetermine" the outcome—but the claim is irrelevant in any event. The Record of Decision approving the Virginia Avenue Tunnel project was issued not by the District of Columbia, but by the Federal Highway Administration, which expressly stated in the Record of Decision that *it did not consider* any agreements between CSXT and the District of Columbia in approving the project. *See* ROD at C-20 (agreements

"between the Government of the District of Columbia … and CSX were not considered, directly or indirectly, by the FHWA decision-maker in this [NEPA] process"). The Committee is not entitled to conduct a wide-ranging fishing expedition through CSXT's files in hopes of finding extra-record materials to bolster a legally invalid "predetermination" argument.

Discovery is almost never permitted in NEPA cases—and the Committee has not made the "strong showing" of bad faith necessary to justify a departure from the general rule, let alone a showing that would warrant discovery at a time when the administrative record is still in the process of being compiled. For those reasons—and because the subpoena is defective, overbroad and unduly burdensome—this Court should order it quashed.

## BACKGROUND

The Virginia Avenue Tunnel is a critical part of the rail network that serves citizens and businesses in the mid-Atlantic and midwestern United States. The tunnel is owned by CSXT and is located on Capitol Hill. It lies beneath approximately nine city blocks with exit portals just west of 2nd Street S.E. and just east of 11th Street S.E. CSXT seeks to modernize this aging tunnel—largely at its own expense—to ensure that this vital rail line can continue to carry and deliver the nation's freight. The rebuilding plan includes adding a second track and providing additional vertical clearance to accommodate modern double-stacked shipping containers.[1]

The project will take between 30 and 42 months to complete. During construction, trains will operate through a tunnel that is fully enclosed, other than a 230-foot segment that is far away from any residence. Once the construction is complete, the entire area will be fully restored. In

[1] The factual background of this case—and the specifics of the Virginia Avenue Tunnel project—are set forth in greater detail in CSXT's Opposition to the Committee's Application for a Preliminary Injunction. *See* ECF No. 26 at 6-16.

fact, it will be better than before, in that there will be additional green space, a new dog park, and a section of Virginia Avenue itself will be straightened to conform to the original L'Enfant Plan.

Any impact from construction activities will be temporary and no different than ordinary construction in an urban area. The Committee has not challenged any of the studies accompanying the environmental review—studies that confirm there will be no meaningful impact on air quality, as any emissions will not exceed de minimis emission thresholds. Nor will there be any vibration beyond that ordinarily produced by typical construction projects. And once the project is completed, the trains will operate in a new tunnel with reinforced concrete walls and a concrete floor, and the neighborhood will return to its normal (indeed improved) state.

The existing tunnel is an aging piece of infrastructure. As a result, CSXT must devote increasing amounts of time and resources to inspection, preventive maintenance and repair to ensure continued safe operations. Because the tunnel is so narrow, this work often means that train traffic through the tunnel must be halted, sometimes with short notice. Stopping rail traffic in an abrupt way can have enormous impacts on traffic throughout the region, much as a disabled subway train can cause massive backups that take hours to dissipate. As five state departments of transportation explained in a joint study, the tunnel creates a "notable capacity limitation[]" and is a "primary congestion point[]" for the region's rail system. *See* I-95 Corridor Coal., *Mid-Atlantic Rail Operations Phase II Study: Final Report* 4-7 (2009). The Metropolitan Washington Council of Governments similarly noted that the tunnel "has long been identified as one of the most significant freight bottlenecks on the East Coast." *Transportation Improvement Program for the Metro Washington Region: FY 2013-2018*, at D-1 (2012).

The plan to rebuild the Virginia Avenue Tunnel was five years in the making. This team effort incorporated the ideas of a universe of federal, state and local officials, project planners and engineers, regional transit agencies, environmental experts, community groups, local residents and businesses, and many other interested people and organizations. The NEPA process leading to the Record of Decision included more than a dozen meetings and briefings with a wide range of government agencies and community groups; ten public meetings and hearings; three opportunities for formal written comments; a 1,615-page Draft Environmental Impact Statement (including 11 appendices); and a 2,639-page Final Environmental Impact Statement (including 13 appendices and specific responses to 133 agencies, organizations and individuals who submitted comments). The Committee participated throughout the process.

The Federal Highway Administration issued its Record of Decision on November 4, 2014, choosing a Selected Alternative. The agency explained that "[t]he Selected Alternative satisfies the Purpose and Need for the Project to a higher degree than the other two Build Alternatives while minimizing environmental impacts and addressing community concerns." ROD at 8. The agency further explained that the Selected Alternative "reduces the construction duration for the Project to the greatest extent possible," and emphasized that the Selected Alternative was also "the environmentally preferred alternative" that would have the least impact on the environment. *Id*.

On November 12, 2014, the Committee sued under NEPA (and its state-law equivalent, the District of Columbia Environmental Protection Act) challenging the Record of Decision. ECF No. 1. On November 14, the Court granted CSXT's unopposed motion to intervene as a defendant. ECF No. 9. On December 11, the Committee served its subpoena on CSXT. *See* Exhibit A.

## ARGUMENT

### I. The Subpoena Demands Discovery That Is Impermissible In A NEPA Case Adjudicated On The Administrative Record.

#### A. NEPA Challenges Are Typically Confined To The Administrative Record.

A NEPA lawsuit challenges agency action and is adjudicated based on the administrative record compiled by the agency. NEPA itself provides no cause of action. Claims invoking NEPA are therefore brought under the Administrative Procedure Act, *see Tulare Cnty. v. Bush*, 306 F.3d 1138, 1143 (D.C. Cir. 2002), and the "task" of a court in such a proceeding is to assess agency action "based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 743-44 (1985); *see also Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court"). The rule that NEPA actions are decided based on the administrative record compiled by the agency, rather than through an evidentiary record assembled through an adversarial document-discovery process, reflects "the widely accepted principle of administrative law that the courts base their review of an agency's actions on the materials that were before the agency at the time its decision was made." *IMS, P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997).

For that reason, discovery is generally not allowed in NEPA cases. Rather, the agency compiles and produces the administrative record, and the court then evaluates the agency action based on that record. The administrative record will contain the documents that had a bearing on the agency's decision and enable the court to perform its review function. To the extent a plaintiff seeks documents *outside* the administrative record, by definition those documents would not have had a bearing on the agency's decision and would not properly be considered in the course of an APA review.

**B. The Committee Has Failed To Make The "Strong Showing Of Bad Faith Or Improper Behavior" By The Government Necessary To Allow Discovery In A NEPA Case.**

Deviations from this rule of "black-letter administrative law" are "quite narrow and rarely invoked," *CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014) (quotation marks omitted), and arise only in "highly exceptional" circumstances. *Cape Hatteras Access Preservation Alliance v. Dep't of Interior*, 667 F. Supp. 2d 111, 112 (D.D.C. 2009). As the D.C. Circuit explained in a recent NEPA case, the "APA limits judicial review to the administrative record except when there has been a strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review." *Theodore Roosevelt Conservation P'shp v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010) (quotation omitted).

Here, the Committee cannot contend that the record—which already contains massive multi-volume Draft and Final Environmental Impact Statements, and will soon be augmented with a large administrative record—is too bare to prevent effective judicial review. Accordingly, the *only* permissible ground for allowing the Committee to take discovery would be based on "a strong showing of bad faith or improper behavior" by the Government.

The Committee has not made the requisite "strong showing" of bad faith. In fact, it has introduced *no* evidence that the Government acted in bad faith by approving the Virginia Avenue Tunnel project. Rather than file a motion with supporting evidence establishing its right to discovery, the Committee simply served a subpoena on CSXT and demanded compliance. Even if such an approach is permissible in other types of civil litigation, it is plainly insufficient under well-settled D.C. Circuit standards for obtaining discovery in NEPA cases. A subpoena containing document requests does not constitute a "strong showing" of bad faith by the Government.

The D.C. Circuit has repeatedly rejected attempts by plaintiffs to take discovery to support "predetermination" arguments. For example, the court held that the district court correctly denied discovery in *Air Transport Association v. National Mediation Board*, 663 F.3d 476 (D.C. Cir. 2011), where the plaintiff had alleged that the agency had "predetermined the outcome and act[ed] with an unalterably closed mind." *Id.* at 487 (quotation omitted; alteration original). The court explained that the "correct legal standard" is that the plaintiff must "make[ ] a significant showing—variously described as a strong, substantial, or prima facie showing" that it is likely to find evidence of the Government's bad faith. *Id.* at 487-88. The court then rejected as insufficient a letter by an agency official claiming that her colleagues' "behavior gave 'the impression' of prejudgment." *Id.* at 488. Similarly, in *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996), the court held that affidavits from agency employees and consultants alleging that the agency had "predetermined" the outcome "fall far short of the 'strong showing' of bad faith required to justify supplementing the record."

There are many other D.C. Circuit cases denying discovery or refusing to consider evidence outside the administrative record where the plaintiff failed to make the requisite "strong showing of bad faith or improper behavior" by the Government. *See, e.g.*, *Commercial Drapery Contractors v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998) (affirming district court's decision to deny discovery in APA case, "which limits review to the administrative record, except where there has been a strong showing of bad faith or improper behavior") (quotation marks and citation omitted); *IMS*, 129 F.3d at 624 (refusing to consider extra-record documents where plaintiff failed to make "the strong showing of bad faith or improper behavior required to justify supplementing the record" (quotation marks omitted)); *Saratoga Dev. Corp. v. United States*, 21 F.3d 445, 458 (D.C. Cir. 1994) (affirming district court's denial of discovery where

plaintiff "simply has not made the 'strong showing' of corrupt decisionmaking necessary to justify court-sanctioned probing of the administrative process"); *San Luis Obispo Mothers for Peace v. U.S. Nuclear Reg. Comm'n*, 789 F.2d 26, 44-45 (D.C. Cir. 1986) (en banc) (court would not consider materials outside the administrative record where the plaintiff could not "point to any independent evidence of improper conduct" by the agency).

Under a straightforward application of this well-settled D.C. Circuit rule, the Committee has failed to make the requisite "strong showing" of bad faith by the Government. Consequently, it has no right to conduct discovery beyond the administrative record and its subpoena must be quashed.

**C. At A Minimum, The Subpoena Must Be Quashed As Premature.**

The Committee's subpoena must also be quashed as premature because it is impossible to know at this time whether the documents the Committee seeks will be contained within the administrative record. Under the local rules, FHWA "must file a certified list of the contents of the administrative record with the Court" no later than February 16, 2015. *See* Local Civil Rule 7(n)(1) (requiring administrative record to be filed by the first weekday following the thirtieth day after the agency serves its answer to the complaint). Once the administrative record has been filed, the Committee is free to move to supplement the record if it believes that FHWA has omitted relevant documents (in which case it will still need to make a strong showing of bad faith, as set forth above). But until that time, there is no basis for forcing CSXT to conduct an expedited production of documents, many of which may well be contained within the administrative record. *See Haw. Longline Ass'n v. Nat'l Marine Fisheries Serv.*, No. 01-cv-765, slip op. at 9 (D.D.C. Jan. 17, 2003) (attached as Exhibit B) (denying discovery request as premature and stating that "[i]t is impossible to prove that the [administrative] record is inadequate without first being afforded time to review it").

## II. The Subpoena Is Unduly Burdensome Because It Demands That CSXT Produce Within 10 Days Vast Quantities Of Irrelevant Documents In Broad Categories With Virtually No Date Restrictions Or Other Meaningful Limitations.

Even if this Court were somehow to conclude that the Committee has made the requisite "strong showing" of bad faith by the Government, its subpoena must still be quashed or substantially modified because it "subjects [CSXT] to an undue burden" by demanding massive volumes of documents that are irrelevant to the claims at issue, and because it "fails to allow a reasonable time to comply." *See* Federal Rule of Civil Procedure 45(d)(3)(A).

### A. The Subpoena Demands Large Numbers Of Documents That Are Irrelevant To The Committee's Claims.

In assessing an "undue burden," a court considers factors "such as [the] relevance [of the materials sought], the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Flatow v. Islamic Republic of Iran*, 202 F.R.D. 35, 36 (D.D.C. 2001) (quotation omitted; alternations original); *see also Phillips & Cohen, LLP v. Thorpe*, 300 F.R.D. 16, 18-19 (D.D.C. 2013) (quashing subpoena on grounds of relevance and undue burden). The Committee's subpoena imposes an undue burden in many respects.

**1.** The subpoena demands vast quantities of documents that are not relevant to this lawsuit. If the Committee's intent is to show that the *Government* predetermined the outcome of the NEPA process, it would not do so by conducting a fishing expedition through the files of *CSXT* in order to find documents that no government employee has ever seen. The substance of communications between CSXT and its contractor—or internal communications within CSXT—can have no bearing on the question whether the Government preordained the outcome of the NEPA process. The subpoena should be quashed because any documents relevant to the Committee's predetermination claim will be produced as part of the administrative record.

Moreover, the subpoena seeks documents concerning CSXT's communications with the District of Columbia. But any such communications would be irrelevant to a predetermination claim because the District of Columbia was not the NEPA decisionmaker. Rather, the Federal Highway Administration was the NEPA decisionmaker, and any purported agreements between CSXT and the District of Columbia would not have bound FHWA. The Committee has never identified any authority for the notion that a federal agency can be deemed to have predetermined the outcome of its Record of Decision based on the actions of a state agency. Indeed, FHWA stated in its Record of Decision that agreements "between the Government of the District of Columbia … and CSX were not considered, directly or indirectly, by the FHWA decision-maker in this [NEPA] process." ROD at C-20, C-52, C-62, C-63, C-95, C-96, C-97, C-130, C-160, C-164. For this reason too, the Court should quash all requests for documents involving the District of Columbia because those requests are based on a legally invalid theory of "predetermination."[2]

The Committee's subpoena should be quashed in its entirety. But at a bare minimum, the subpoena must be limited to communications with the Government or documents that were shared with the Government. All requests for internal CSXT communications, or for communications between CSXT and its contractors, must be quashed.

**2.** The subpoena should be quashed or substantially modified because the document requests are overbroad. The subpoena includes 27 separate requests, most of which demand "all

[2] It is no answer to point to the District of Columbia Department of Transportation's role as the co-preparer of the Environmental Impact Statement (EIS). That is because FHWA also prepared the EIS, and the EIS thus reflects the independent judgment of the federal government; there is no basis to conclude that FHWA simply rubber-stamped the analysis. Thus, even if the District of Columbia could somehow be deemed to have locked itself into the outcome of the EIS, the Committee cannot establish predetermination unless it can also show that the Federal Highway Administration bound itself in advance to the outcome.

documents associated with" or "referring or relating to" certain topics. *See* Requests 2, 3, 5, 6, 14, 15, 18, 19, 20, 23, 24, 25. These requests should be quashed as unduly burdensome or modified to require the production of specific individual documents.

Moreover, the requests contain no date limitations, other than Requests 26 and 27 (which are "limited" to documents created between January 1, 2005 and the present). To the extent the document requests are not quashed in their entirety, they should be restricted to documents created within a far narrower time period.

The "Definitions" section is also overbroad, in that it defines "CSXT" to include not just CSXT, but all "agents," "representatives," "contractors" and "subcontractors" of CSXT, as well as "any trade or industry organizations" that advocate for the railroad industry. This definition has the effect of expanding the scope of the document requests exponentially by bringing within their ambit potentially hundreds of additional individuals and organizations that have had some involvement with the Virginia Avenue Tunnel project. In addition, many states and local governments have long been advocating for the project. Consequently, the subpoena's broad requests would encompass numerous documents reflecting communications with these governments, including email correspondence, funding applications and other documents that have no relevance to the claims in this lawsuit.[3]

Attempting to comply with the Committee's overbroad requests would impose an enormous and undue burden on CSXT. The Committee seeks to force CSXT to locate and produce virtually every document in its possession even tangentially related to the Virginia Avenue Tunnel project (and many documents that have nothing to do with the Virginia Avenue

[3] The subpoena is also deficient because it fails to identify the issuing court, as required by Rule 45.

Tunnel project). As the Committee is surely aware, this had been a major project involving numerous individuals within the company for many years. It would take significant time even to identify the universe of all of those people, and even more time to identify the documents they may possess, review those documents for responsiveness and privilege, and prepare them for production. *See* Declaration of Bonnie C. Kennedy (attached as Exhibit C). Moreover, many of the documents likely contain "confidential … commercial information" such as business strategies and financial information, *see* FRCP 45(d)(3)(B)(i), as well as sensitive security information governed by federal regulations, *see* 40 C.F.R. §§ 1520.7(n), 1520.9. For these reasons, the document requests should be quashed or substantially narrowed.

**B. The Subpoena Fails To Allow A Reasonable Time To Comply.**

The Committee demands that, with regard to 16 of the 27 document requests, CSXT comply within 10 days of service (*i.e.*, by December 29) and that it comply with the remaining requests with 20 days.[4] Those deadlines violate Rule 45, which requires that the issuer of a subpoena allow a "reasonable" time for the recipient to comply. Allowing a mere 10 or 20 days to identify, collect, review and produce vast quantities of documents in 27 separate broad categories is unreasonable on its face. Indeed, the Committee filed its lawsuit on November 12.

---

[4] Under Federal Rule of Civil Procedure 6, the initial production deadline is December 29; *see* Subpoena Ex. 1, at 2 (adopting Rule 6's time calculations). That deadline is calculated as follows. Ten days from service was Sunday, December 21. That date was extended to Monday, December 22 per Rule 6(a)(3)(A). Due to the method of service, the period was further extended three days to December 25 per Rule 6(d). Both December 25 and Friday, December 26, are legal holidays under Rule 6(a)(1)(C), the latter due to the President's order closing the executive branch for that day. *See Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003) (holding that an executive order closing the executive branch on December 24, 2002 qualified the day as a holiday under FRCP 6(a)); Exec. Order (Dec. 5, 2014) (similar order for December 26, 2014), http://1.usa.gov/1u5RtIq. Consequently, the production deadline is Monday, December 29, 2014, the "next day that is not a Saturday, Sunday, or legal holiday." Rule 6(a)(1)(C).

It then waited a month to serve its subpoena on CSXT and demand a 10-day turnaround. Those tactics are *per se* unreasonable and harassing.

The Committee identifies no reason why it must have all of these documents within 10 or 20 days. During the November 17 teleconference with the Court, the Committee's counsel stated that he intended to seek discovery for use in the merits phase of the case, not in conjunction with his motion for a preliminary injunction. And even if the Committee did intend to use the documents in conjunction with the preliminary injunction proceeding, that hearing has now been pushed back to February 17 at the request of the Committee's counsel. Accordingly, there is no possible justification for the Committee attempting to impose a 10- or 20-day turnaround on CSXT and its subpoena must be quashed or modified for that reason.

**CONCLUSION**

This Court should quash the Committee's subpoena.

Dated: December 26, 2014

Respectfully submitted,

/s/ Thomas H. Dupree, Jr.

Thomas H. Dupree, Jr.
(D.C. Bar No. 467195)
Michael K. Murphy
(D.C. Bar No. 468907)
David A. Schnitzer
(D.C. Bar No. 1022420)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
(202) 955-8500

Peter R. Steenland, Jr.
(D.C. Bar No. 79236)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8532

Peter J. Shudtz
(D.C. Bar No. 188243)
CSX TRANSPORTATION, INC.
1331 Pennsylvania Avenue, N.W.
Suite 560
Washington, DC 20004
(202) 783-8124

**CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of December, 2014, I caused a copy of the foregoing Motion to Quash Plaintiff's Subpoena, together with the memorandum of points and authorities, and exhibits in support thereto, and the Proposed Order, to be filed through the CM/ECF system, causing counsel for the plaintiff and the government defendants to be served by electronic means.

/s/ Thomas H. Dupree, Jr.
Thomas H. Dupree, Jr.
(D.C. Bar No. 467195)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
(202) 955-8500