**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **COMMITTEE OF 100 ON THE FEDERAL CITY,** | |
| Plaintiff, | |
| v. | Case No. 1:14-cv-01903 (CRC) |
| **ANTHONY FOXX, <u>et al.</u>,** | |
| Defendants. | |

**<u>MEMORANDUM OPINION</u>**

The Committee of 100 on the Federal City, a community planning and historic

preservation organization, filed suit in November 2014 seeking to enjoin construction on an

aging rail tunnel that runs through the core of Washington, D.C.  As the Court has previously

explained, <u>see</u> <u>Comm. of 100 on Fed. City v. Foxx</u>, 87 F. Supp. 3d 191, 196 (D.D.C. 2015), the

Committee contends that the District of Columbia Department of Transportation ("DDOT") and

the United States Department of Transportation, through the Federal Highway Administration

("FHWA"), violated the National Environmental Policy Act ("NEPA") by committing

themselves to the project before completing their review of its environmental impact.

In ruling on the Committee's motion for a preliminary injunction, the Court found,

however, that the Committee's evidence did not establish that the local agency—DDOT—had

predetermined the outcome of the environmental review, or that any local predetermination

could be attributed to the federal agency—FHWA.  <u>See</u> <u>id.</u> at 211.  And in ruling on the

Committee's subsequent motion to alter that judgment, the Court held that "the portions of the

administrative record provided by the Committee do not support its position that DDOT

unlawfully predetermined the NEPA outcome or that FHWA failed to independently consider the

environmental effects of the tunnel reconstruction."  Comm. of 100 on Fed. City v. Foxx, No.

1:14-CV-01903 (CRC), 2015 WL 3377835, at *5 (D.D.C. May 26, 2015).

Recycling many of the same arguments and most of the same evidence it put forward

previously, the Committee now moves to supplement the administrative record and for leave to

conduct discovery "in order to substantiate its claim that the [project's] Environmental Impact

Statement violated NEPA as a result of unlawful predetermination."  Pl.'s Mot. to Supplement

the Administrative Record & for Leave to Conduct Discovery ("Mot. to Supplement") 1.

According to the Committee, supplementing the administrative record and conducting discovery

would enable it to answer two questions:

> [W]hether the District agreed to reach certain decisions regarding the
> environmental effects of the Virginia Avenue Tunnel expansion project, and then
> concealed those agreements or made them appear 'contingent on the outcome' of
> the NEPA process . . . [and] whether FHWA knew about that predetermination and
> took appropriate steps to insulate itself from that predetermination.

Id. at 2.  But without identifying with specificity the documents that it seeks to include in the

administrative record or offering non-speculative evidence that such documents were considered

by agency decision-makers, the Committee has not met its burden to show that supplementation

is warranted.  And because the Committee has not made a strong showing of bad faith or

improper conduct on the part of the agencies, or otherwise demonstrated that the record is

incomplete, it may not obtain discovery.  The Court will therefore deny the Committee's motion.

## I.      Background

The Court assumes familiarity with the facts and law outlined in its prior opinions, and

will only briefly recount the salient facts as laid out in its decision denying reconsideration:

> [On November 12, 2014, the] Committee of 100 on the Federal City filed
> an application for a preliminary injunction to prevent construction on the Virginia
> Avenue Tunnel in the Capitol Hill neighborhood of Washington, D.C.  The Court
> denied the application in a 46–page Opinion after conducting a hearing.  CSX

Transportation ("CSXT") seeks to renovate the 111–year–old Virginia Avenue tunnel by adding a second track, improving the track ballast, and raising the ceiling to permit double-stacked trains. The . . . FHWA, along with . . . DDOT as co-lead agency, published an Environmental Impact Statement and Record of Decision ("ROD") under the National Environmental Protection Act allowing CSXT to proceed with the reconstruction, and the Committee has brought suit to challenge that decision.

Among other issues, the Committee contended in its preliminary injunction application that DDOT unlawfully predetermined the outcome of the NEPA review by entering into a series of agreements with CSXT. DDOT agreed, among other things, to provide letters of support for the project; manage the EIS process; issue permits and provide easements in the event of NEPA approval; and redesign, at CSXT's expense, an ongoing project near the tunnel to permit reconstruction. Those agreements also provided benefits to the District of Columbia and DDOT, including an option enabling DDOT to make an offer to CSXT to purchase a right-of-way in Southeast D.C. to be used as a walking and biking trail. The Committee argued further that the alleged NEPA predetermination reflected in these agreements should be attributed to FHWA because the federal agency failed to independently consider the data and analysis underpinning the EIS. The Court, however, found that the agreements did not reflect predetermination of the environmental review process because they neither irreversibly committed resources to the project nor bound DDOT to arrive at a specific NEPA outcome. And relying on FHWA's representations in the EIS and ROD that the federal agency had independently reviewed the facts and analysis underlying the EIS, the Court concluded that, even if DDOT had prejudged the NEPA result, the Committee had failed to satisfy its burden to attribute that predetermination to FHWA.

After the Court denied the Committee's preliminary injunction application, the Committee filed an appeal with the D.C. Circuit and sought an emergency stay of the reconstruction from this Court, which the Court denied. The Committee then requested that the Circuit stay the project. Meanwhile, the parties filed the certified list of the contents of the administrative record. Pointing to a series of emails and agreements contained in this record that it argues shed new light on its claims of predetermination, the Committee on May 5, 2015 filed a motion under Federal Rule of Civil Procedure 59(e) to set aside the Court's denial of its preliminary injunction application. On May 11, 2015, [t]he Court of Appeals issued an order staying the Committee's appeal and directing this Court to consider the Committee's new evidence in the first instance. The Court held a telephonic scheduling conference with the parties the next day and issued an order expediting the remaining briefing

schedule on the Committee's Rule 59(e) motion.  Briefing was completed on May

21, 2015.

Comm. of 100, 2015 WL 3377835, at *1–2 (internal citations omitted).

On May 26, 2015, the Court denied the Committee's motion to alter the denial of its

motion for a preliminary injunction, "conclud[ing] . . . that the Committee's new evidence [did]

not satisfy its burden to demonstrate that the agencies failed objectively to consider the

environmental impacts of the reconstruction."  Id. at *1.  The following day, the D.C. Circuit

denied both the Committee's motion for an emergency stay pending appeal and the Committee's

motion for summary reversal.  Comm. of 100 on Fed. City v. Foxx, No. 15-5112, 2015 WL

4072321, at *1 (D.C. Cir. May 27, 2015) (per curiam).  On July 6, 2015, the Committee again

moved this Court to reconsider its earlier decision, and the Court denied the motion on August 3,

2015.  See Order Denying Pl.'s Mot. Recons., ECF No. 88.  In the intervening period, the

Committee moved to dismiss its appeal before the D.C. Circuit, and the Circuit obliged on July

1, 2015.  Comm. of 100 on Fed. City v. Foxx, No. 15-5112, 2015 WL 5210462, at *1 (D.C. Cir.

July 1, 2015).  This Court must now decide whether to order supplementation of the

administrative record with the categories of documents requested by the Committee and whether

to allow the Committee to conduct discovery.

## II.     Legal Standard

### A.  Supplementing the Administrative Record

Judicial review of agency action is generally confined to the administrative record as

designated by the agency.  See James Madison Ltd. by Hecht v. Ludwig, 82 F.3d 1085, 1095

(D.C. Cir. 1996).  "The administrative record includes all materials compiled by the agency that

were before [it] at the time the decision was made."  Id.  And "absent clear evidence to the

contrary, an agency is entitled to a strong presumption of regularity, [i.e.,] that it properly

designated the administrative record." Pac. Shores Subdivision v. U.S. Army Corps of Eng'rs, 448 F. Supp. 2d 1, 5 (D.D.C. 2006).  As a result, courts "do not allow parties to supplement the record 'unless they can demonstrate unusual circumstances justifying a departure from this general rule.'"  City of Dania Beach v. F.A.A., 628 F.3d 581, 590 (D.C. Cir. 2010) (quoting Tex. Rural Legal Aid v. Legal Services Corp., 940 F.2d 685, 698 (D.C. Cir. 1991)).  In this Circuit,

> the record can be supplemented in three instances: (1) if the agency "deliberately or negligently excluded documents that may have been adverse to its decision," (2) if background information was needed "to determine whether the agency considered all the relevant factors," or (3) if the "agency failed to explain administrative action so as to frustrate judicial review."

Id. (quoting Am. Wildlands v. Kempthorne, 530 F.3d 991, 1002 (D.C. Cir. 2008)).

Moreover, to rebut the presumption of regularity—and thus "for [a] Court to entertain a request for supplementation"—"'beyond [a] description and the date of the proffered exhibits,' [p]laintiffs must describe 'when the [omitted] documents were presented to the agency, to whom, and under what context.'"  Banner Health v. Sebelius, 945 F. Supp. 2d 1, 17 (D.D.C. 2013) (quoting Pac. Shores, 448 F. Supp. 2d at 7).  In other words, "[p]laintiffs must identify the materials allegedly omitted from the record with sufficient specificity, as opposed to merely proffering broad categories of documents . . . that are 'likely' to exist as a result of other documents that are included in the administrative record."  Id.  Then, "[p]laintiffs must offer 'reasonable, non-speculative' grounds for their belief that the [requested] documents were directly or indirectly *considered* by the [agency]."  Id. (emphasis added).  If plaintiffs meet their burden of providing sufficient "proof . . . that an agency 'did not include materials that were part of its record, whether by design or accident, then supplementation is appropriate.'"  Nat'l Min.

Ass'n v. Jackson, 856 F. Supp. 2d 150, 156 (D.D.C. 2012) (quoting Pac. Shores, 448 F. Supp. 2d at 6).

      B.  Conducting Extra-Record Discovery

Discovery is generally not available in cases reviewing agency action. See Air Transp. Ass'n of Am., Inc. v. Nat'l Mediation Bd., 663 F.3d 476, 487 (D.C. Cir. 2011). "But if a party makes a significant showing—variously described as a strong, substantial, or prima facie showing—that it will find material in the agency's possession indicative of bad faith or an incomplete record, it should be granted limited discovery." Id. at 487–88 (quoting Air Transp. Ass'n of Am., Inc. v. Nat'l Mediation Bd., No. 10–0804, slip op. at 3 (D.D.C. June 4, 2010)) (internal quotation marks omitted). Indeed, "there must be a strong showing of bad faith or improper behavior before [an inquiry into the administrative decisionmaking process] may be made." Id. at 488 (alteration in original) (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971)). "Strong evidence of unalterably closed minds," for instance, could constitute such a showing and may "justify discovery into the [agency's] decisionmaking process." Id. (quoting Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8–9 (2001)) (internal quotation marks omitted).

As when a party seeks to supplement the administrative record with particular documents, however, he or she "must overcome the standard presumption that the 'agency properly designated the Administrative Record.'" Amfac Resorts, L.L.C. v. U.S. Dep't of Interior, 143 F. Supp. 2d 7, 12 (D.D.C. 2001) (quoting Bar MK Ranches v. Yuetter, 994 F.2d 735, 740 (10th Cir. 1993)). Moreover, "discovery is only available if a party makes a 'substantial showing' that material providing a basis for extra-record review will be uncovered" through discovery. Id. at 13. Thus, unless it appears at least somewhat likely that discovery will

reveal that an agency acted improperly or provided an incomplete record, a court should not allow discovery against an agency.  This is especially true when a party seeks to depose agency officials.  <u>Cf.</u> <u>Capital Eng'g & Mfg. Co. v. Weinberger</u>, 695 F. Supp. 36, 41 (D.D.C. 1988) (observing that even when plaintiffs are entitled to discovery against an agency, they are not "necessarily entitled to . . . depositions and potentially voluminous documentary materials").

**III.     Analysis**

      A.  <u>Supplementing the Administrative Record</u>

The Committee seeks to supplement the administrative record with five broad categories of documents:

> 1. All communications and other documents that refer or relate to "The Joint Cooperation Agreement" that was being negotiated between CSXT and the District.
>
> 2. All communications and other documents that refer or relate to any permits the District, or any agency thereof, discussed with or issued to CSXT in association with the Virginia Avenue Tunnel.
>
> 3. All communications and other documents that refer or relate to any dealings between CSXT and the District regarding [the] Shepherd Branch [right-of-way].
>
> 4. All communications and other documents associated with the $500,000 donation CSXT made to the District of Columbia.
>
> 5. All communications and other documents associated with how the cost of lining the 11th Street SE sewer would be shared between CSXT and the District.

Mot. to Supplement 26.  The Committee contends that any documents that fall into these categories but "that were not produced in the Administrative Record should be made part of the record because they might have influenced the agency's decision . . . even if they did not literally pass before the eyes of the final agency decision maker."  <u>Id.</u> at 27.  In other words, the Committee claims that the administrative record is incomplete because documents that might have influenced the NEPA determination were improperly excluded from the record, potentially

because those documents might contain "unfavorable information."  Id. at 25 (quoting Banner Health, 945 F. Supp. 2d at 16).

The Committee fails to specify, however, in what way the current administrative record is incomplete or to identify what documents are supposedly missing from the record.  That is, rather than "indicat[e] specific, known additional documents that it insists should be included in the administrative record," Blue Ocean Inst. v. Gutierrez, 503 F. Supp. 2d 366, 369 (D.D.C. 2007), the Committee "merely proffer[s] broad categories of documents" that it believes might exist and could possibly support its claim, Banner Health, 945 F. Supp. 2d at 17.  Indeed, the Committee requests that the administrative record be supplemented "*to the extent*" that documents from the categories it lists "were not already included in the" record.  Mot. to Supplement 26.  Thus, the Committee has hardly argued that the record is incomplete, let alone provided "concrete evidence to show that the record was not properly designated."  Pac. Shores, 448 F. Supp. 2d at 6.  Because in its motion the Committee "ha[s] pointed to no specific documents" with which it believes the record should be supplemented,[1] Lee Mem'l Hosp. v.

---

[1] In its reply, the Committee gets a little more specific.  It claims that

> Defendants' [opposition] indicates that the Joint Cooperation Agreement, a final version of which has never been produced, was actually finalized. . . .  The record must be supplemented to include the [final] Joint Cooperation Agreement, since [it] clearly was part of the path that DDOT, and by extension, FHWA traveled in reaching its decision to endorse the Tunnel Expansion option.

Pl.'s Reply 6.  Aside from citing the reference in Defendants' opposition to the Joint Cooperation Agreement, the Committee offers no evidence that a different version of the Joint Cooperation Agreement, other than that already included in the administrative record, was considered by FHWA decision-makers.  The Court thus lacks a basis for ordering supplementation of the record with a purported "final version" of the agreement.  That said, if a "final version" of the Joint Cooperation Agreement (different from that currently in the record) was considered— directly or indirectly—by FHWA decision-makers, then certainly that document should have been included.  If such a document does exist but was mistakenly excluded, DDOT should take the opportunity now to add it to the administrative record.

Burwell, No. 13-cv-643, 2015 WL 3631811, at *12 (D.D.C. June 11, 2015), or otherwise

"identif[ied] the materials allegedly omitted from the record with sufficient specificity," Banner

Health, 945 F. Supp. 2d at 17, it has not "defeated the presumption that the administrative record

is complete," Blue Ocean Inst., 503 F. Supp. 2d at 371.

    Nor has the Committee "shown that the documents to be included [in the supplemented

administrative record] were before the agency decisionmaker," that is, FHWA, "at the time it

made its decision." Pac. Shores, 448 F. Supp. 2d at 6.  As this Court noted in its ruling on the

Committee's preliminary injunction motion, NEPA—as a statute governing the actions of federal

agencies—does not directly apply to DDOT's conduct. Comm. of 100, 87 F. Supp. 3d at 210.

Thus, "even if DDOT did somehow predetermine the NEPA outcome, DDOT's bias must be

attributed to FHWA in order for there to be a NEPA violation." Id.  Similarly, to supplement the

administrative record, the Committee must provide reasonable, non-speculative grounds for

believing that the documents it seeks to add to the record "were directly or indirectly considered

by . . . decisionmaker(s)" *at FHWA*.  Pac. Shores, 448 F. Supp. 2d at 7.  The Committee

acknowledges as much.  See Pl.'s Reply 5 (stating that the relevant question is whether "FHWA

directly or indirectly considered the agreements between the District and CSXT" (emphasis

omitted)).

    "Conclusory statements," however, "will not suffice" to meet the Committee's burden.

Nat'l Min. Ass'n, 856 F. Supp. 2d at 156; see also Pac. Shores, 448 F. Supp. 2d at 6 ("[I]t is not

enough for [plaintiff] to *state* that the documents were before the entire [agency], but rather it

must instead *prove* that the documents were before the [agency's] decisionmaker(s)." (emphasis

added)).  The onus is on the Committee to demonstrate, not speculate, reasonable grounds for

believing that FHWA decision-makers considered the documents with which it seeks to

supplement the record.  Other than simply asserting that these documents—to the extent they

exist—"might have influenced the agency's decision," Mot. to Supplement 27, the Committee

has not provided the Court with any detail to substantiate that claim.  It certainly has not

"describe[d] 'when the documents were presented to the agency, to whom, and under what

context.'"  Banner Health, 945 F. Supp. 2d at 17 (quoting Pac. Shores, 448 F. Supp. 2d at 7).

Because the Committee can provide no more than speculation that certain classes of unknown

documents were considered by the actual FHWA decision-makers, it has not overcome the

"strong presumption" that the agency "properly designated the administrative record."  Pac.

Shores, 448 F. Supp. 2d at 6.  The Court will therefore deny the Committee's request to

supplement the administrative record.

### B.  Conducting Extra-Record Discovery

Related to but distinct from its effort to supplement the administrative record,

the Committee moves the Court to allow it to conduct discovery in the form of document

production and the taking of depositions.  In particular, the Committee seeks to compel the

production of all documents covered by the five categories that it initially listed in its request to

supplement the administrative record.  Mot. to Supplement 33; see also supra Section III.A.  The

Committee also seeks to take the depositions of twelve individuals, including DDOT and FHWA

officials.  Mot. to Supplement 33.  The Committee primarily contends that it is entitled to

discovery because "it has presented strong evidence that the Defendants acted with bad faith,

improper motive and/or unalterably closed minds," Pl.'s Reply 16, which differs from mere

"subjective agency bias in favor of the project," Comm. of 100, 2015 WL 3377835, at *7.

In making this argument, the Committee relies on this Court's holding that "[a]n agency

can . . . predetermine the outcome of its review if it agrees to reach a certain decision regarding

the environmental effects of a project before completing the substantive analysis of those effects." Id. at *2. The Committee maintains that it has presented strong evidence demonstrating that agency officials "agreed to reach certain decisions regarding the environmental effects of the . . . project" before completing the NEPA process. Mot. to Supplement 2. Believing it has shown that agency officials acted in bad faith—that is, that they agreed to reach a certain decision regarding environmental effects and concealed that agreement—the Committee contends that it is entitled to conduct discovery.

The question of whether agency officials improperly agreed to reach a certain decision regarding environmental effects is of course different from that of whether the outcome of the review was predetermined in an objective sense—i.e., whether an "agency irretrievably commit[ed] resources to . . . federal action." Comm. of 100, 87 F. Supp. 3d at 201. Thus, even though "this Court has declared the agreements presented here do not rise to the level of predetermination" under a purely objective test, Mot. to Supplement 30, the Committee may still be entitled to discovery if it can make a strong showing that discovery will reveal that agency officials acted in bad faith, such as with unalterably closed minds, and that those actions can be attributed to FHWA. See id. at 205 ("[NEPA] requires agencies to consider potential environmental effects objectively and in good faith."). The Court finds, however, that the Committee has not met its burden to make a strong showing that discovery will lead to "material in the agency's possession indicative of bad faith or [even] an incomplete record." Air Transp. Ass'n of Am., 663 F.3d at 488.

As Defendants observe, much of the Committee's argument is reprised from its motion to alter judgment, which the Court denied. See Comm. of 100, 2015 WL 3377835. For instance, the Committee presently contends that agency officials' bad faith is demonstrated by the fact that

11

"both District and FHWA officials . . . believed that the various agreements between the District and CSXT violated NEPA, and yet went forward with the [EIS]."  Mot. to Supplement 30.  In particular, the Committee points to an email from FHWA official Michael Hicks, stating that DDOT has "an announced preferred alternative so it's already pre-decisional."  Mot. to Supplement 7 (quoting Pl.'s App. 210).   This Court, however, has already considered "[t]he Committee['s] conten[tion] that this email establishes that Hicks believed DDOT had predetermined the outcome of the NEPA review" and held that "[w]hile it is unclear to the Court precisely what Hicks meant, the Committee's interpretation of the email is strained."  Comm. of 100, 2015 WL 3377835, at *4.  Similarly, the Committee points to an email from DDOT employee Faisal Hameed, where Hameed expressed his view that "there are many things in the [draft Joint Cooperation Agreement between DDOT and CSXT] that are not consistent with the NEPA process."  Mot. to Supplement 12 (quoting Pl's. Supplemental Ex. 6).  The Court has also already considered this very email and explained that it merely "identif[ied] issues that must be resolved *so as to be* 'consistent with the NEPA process.'"  Comm. of 100, 2015 WL 3377835, at *4 (emphasis added); see also Air Transp. Ass'n of Am., (stating that an internal "letter [that] reflects serious intra-agency discord"—even one that describes the agency's behavior as giving "'the impression' of prejudgment—falls short of the 'strong' evidence of 'unalterably closed minds' necessary to justify discovery into [an agency's] decisionmaking process").  The Court even noted that this document "appear[s] to *contradict* [the Committee's] assertion that DDOT agreed to reach a certain outcome in the environmental review or committed resources to the project before NEPA review was complete."  Id. at *4.

The Committee does identify two *new* emails to support its claim that some D.C. officials believed the agreements between the District and CSXT violated NEPA, but as with Mr.

Hameed's and Mr. Hicks's emails, the Court concludes that they do not demonstrate bad faith. In particular, the Committee points to correspondence from Margaret Crane, a DDOT lawyer, who expressed her "genuine[] concern[] that rushing to amend the Permit the day before the FEIS is issued will taint the process of the FEIS and subject the Agency to unnecessary scrutiny," Supplemental Ex. 16, and described the "DDOT team['s]" view that "the issuance of a permit prior to the selection of the preferred alternative has the appearance of making the selection of the preferred alternative a forgone conclusion and taints the entire environmental review process," id.  While Crane and others may indeed have doubted the propriety of issuing these permits, the Court has already held that such "conditional permits do not demonstrate an unlawful predetermination of the NEPA outcome." Comm. of 100, 87 F. Supp. 3d at 208. Moreover, evidence of internal agency dissent about proper procedure and concern about the appearance of predetermination does not suffice to demonstrate bad faith or, consequently, to justify discovery into agency officials' decision-making process. See Air Transp. Ass'n of Am., Inc., 663 F.3d at 487.  Thus, the Court is not persuaded that the correspondence the Committee identifies—from Hicks, Hameed, and Crane—amounts to a substantial showing of bad faith or strongly indicates that material indicative of bad faith will be found in the agencies' possession.[2]

As to the Joint Cooperation Agreement itself, which the Committee appears to reference as evidence that agency officials acted with unalterably closed minds, the Court has also already considered the language cited by the Committee:  "While the Court agrees with the Committee that this particular draft of the proposed joint cooperation agreement *could* be read to

---

[2] The Court also notes that FHWA expressly declined to consider the agreements between DDOT and CSXT in reaching its decision to issue the EIS and Record of Decision ("ROD"). See ROD [ECF No. 27-13] at 3 ("FHWA did not consider occupancy permits issued by DDOT and agreement memoranda between DDOT and CSX in reaching this decision.").  FHWA's lack of reliance on the agreements thus removes any "taint" Crane may have perceived from them.

unconditionally require the city to issue all necessary permits, Pl. App. 508, the final agreements

that DDOT and CSXT ultimately signed explicitly conditioned permits on NEPA approval,

Appl. Prelim. Inj. Exs. 15, 19." Id. (emphasis added).  The Court therefore rejected the

Committee's "assertion that DDOT agreed to reach a certain outcome in the environmental

review or committed resources to the project before NEPA review was complete." Id.

On the issue of the propriety of DDOT's relationship with CSXT, the Committee again

holds up many of the same documents and repeats the same arguments that this Court has

already rejected.  Here, see Mot. to Supplement 3–4, as before, the Committee points to

> emails in which a CSXT contractor noted that "the anticipated role of DDOT . . . is
> to facilitate the process of review and approval of the NEPA documentation," Pl.
> App. 76, and a DDOT official communicated to CSXT that "DDOT is open to
> acting on CSX's behalf for the environmental work associated with the Virginia
> Avenue Tunnel project," Pl. App. 124.  While these documents come a step closer
> to providing evidence of predetermination than those discussed above, they still do
> not meet the Committee's burden.  These documents perhaps *could* be read as
> indicating a *willingness* to arrive at a favorable NEPA outcome, but they are not a
> promise to do so.  Moreover, the Court reads the emails as being equally if not more
> consistent with DDOT simply agreeing to perform work as a participant in the
> NEPA review process.  And any predetermination concerns raised by these
> comments are reduced when they are viewed in context . . . .

Comm. of 100, 2015 WL 3377835, at *3 (emphasis added).  Thus, these documents—the import

of which is ambiguous at best—do not suffice to demonstrate that DDOT acted in bad faith.

Additionally, the Committee contends that "[t]he fact that District officials explicitly

stated their desire to keep important aspects of the project and the NEPA process secret from the

public . . . indicates bad faith and improper conduct that should permit the Plaintiff to conduct

discovery."  Mot. to Supplement 31.  It points to, for example, a "DDOT recommended[ation]

that the Mayor decline to hold a town hall meeting because the City did not intend to change its

mind about pushing the tunnel expansion project forward."  Id. at 17.  But, as the Court has

already held, this "email from DDOT[,] recommending 'against having another town hall

meeting . . . because we will be essentially repeating the same information that has been communicated on numerous occasions,' Pl. App. 595—[does not] show that DDOT had agreed to reach a specific NEPA outcome." Comm. of 100, 2015 WL 3377835, at *3.

The Committee further contends that the record is clearly incomplete because "the City Administrator's actions are not explained in the Administrative Record." Mot. to Supplement 31.  The Committee supports this contention with the claim "that the City Administrator agreed to a deal that required permits to be addressed before January 31, 2013," and by citing documents that "make reference to negotiations and dealings that were carried out in secret – particularly by the City Administrator or his staff, which were kept secret from DDOT." Mot. to Supplement 31–32.  Again, however, "the Committee reads too much into the suggestion in some of the documents that DDOT, the Mayor's Office, and the City Administrator . . . negotiated with CSXT without each other's knowledge." Comm. of 100, 2015 WL 3377835, at *3.  As the Court has already concluded, "[n]one of these documents . . . show that DDOT had agreed to reach a specific NEPA outcome." Id. at *3.

Finally, the Committee argues that it "should have the opportunity to examine what FHWA knew about the District's agreements with CSXT at the time that it issued the Record of Decision endorsing the tunnel expansion project and to fully explore the actions FHWA took to insulate itself from any unlawful conduct."  Mot. to Supplement 32.  The Committee's claim falters at the starting block because it asserts that its evidence "raise[s a] question" as to the propriety of FHWA's actions and oversight.  Mot. to Supplement 32.  A party is not entitled to conduct discovery against an agency simply because it has raised a question as to the agency's good faith.  Rather, a *strong showing* that discovery will reveal bad faith on the part of the agency is required.  Air Transp. Ass'n of Am., 663 F.3d at 487.  Moreover, the Court has already

considered the "email communications" that the Committee argues support its request for discovery against FHWA and concluded that they "do not support [the Committee's] position . . . that FHWA failed to independently consider the environmental effects of the tunnel" or otherwise acted improperly.  <u>Comm. of 100</u>, 2015 WL 3377835, at *5.

In sum, none of the communications or documents that the Committee includes in its 23 exhibits—most of which the Court had already considered—constitutes a strong showing of bad faith or demonstrates that discovery is likely to uncover information in the agencies' possession indicative of bad faith.  Based on the evidence put forward by the Committee, it may be possible that some agency officials were determined to reach a certain NEPA result.  But the possibility of bad faith is not enough.  And the Committee is not entitled to discovery just because "evidence outside of the administrative – deduced by deposition testimony of the relevant officials – *could* demonstrate that District officials had guaranteed to ensure that the [EIS] would result in recommending one of the 'build' options."  Mot. to Supplement 31 (emphasis added).  To obtain discovery, the Committee need have made a strong showing of bad faith or an incomplete record.  The Court finds that it has not done so here.

## IV.   Conclusion

For the foregoing reasons, the Committee has failed to carry its burden with respect to seeking to supplement the administrative record and conduct extra-record discovery.  The Court will therefore deny the Committee's motion.  A separate Order accompanies this Memorandum Opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:    October 22, 2015